UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH LACHAPELLE, et al.,<br>    Plaintiffs,<br>v.<br>DONG KWAN KIM, et al.,<br>    Defendants. | Case No. 15-cv-02195-JSC<br><br>**ORDER GRANTING MOTION TO DISMISS**<br>Re: Dkt. No. 17 |

Plaintiffs Joseph Lachapelle and James Field ("Plaintiffs") bring this action against Defendants Dong Kwan Kim ("Kim"), Young Song ("Song"), ZeroDesktop, Inc. ("ZeroDesktop"), Klaus Maier ("Maier"), nComputing, Inc. ("nComputing"), Daehong Technew Corp. ("DTC"), and a number of Doe Defendants (collectively, "Defendants") to recover allegedly fraudulent transfers and for damages. The complaint alleges that Defendants engaged in a scheme to transfer assets from nComputing to ZeroDesktop to prevent Plaintiffs from satisfying an outstanding judgment against Kim. Defendants Song and ZeroDesktop have moved to dismiss the complaint. (Dkt. No. 17.) The Court concludes that oral argument is unnecessary. *See* Civ. L.R. 7-1(b). Having considered the parties' submissions and the relevant authority, the Court GRANTS the motion with leave to amend.

**BACKGROUND**

The following facts are based on the allegations in the complaint and documents of which the Court takes judicial notice.

Following a jury trial in state court in Oregon, Plaintiffs, pursuing shareholder derivative claims on behalf of Deep Photonics, Inc., obtained a judgment ("Judgment") against Kim, among others, in the amount of $10,000,000.00. (Dkt. No. 1 ¶ 7; Dkt. No. 18-1 at 2-3.) As of the filing

of the complaint, only $300,000.00 of the Judgment has been paid. (Dkt. No. 1 ¶ 7.) The complaint relates Plaintiffs' attempts to satisfy the remainder of the judgment against Kim. These efforts have involved legal action in Oregon, Delaware, and California state courts, as set forth below.

Kim is an individual who owns or controls DTC. (Dkt. No. 1 ¶¶ 2, 8.) Kim and/or DTC, in turn, own and control nComputing, a Delaware corporation. (*Id.* ¶¶ 4, 8.) In response to interrogatories that Plaintiffs propounded against Kim in post-judgment debt collection proceedings in the original Oregon case, Kim disclosed that he owned shares of stock in both nComputing and ZeroDesktop, a California corporation. (Dkt. No. 1) Defendants Song and Maier are officers or employees of nComputing, and longtime business associates of Kim. (*Id.* ¶ 4.) On January 20, 2015, Plaintiffs' counsel advised nComputing in writing of the Judgment and notified nComputing that any asset transfer by nComputing would be viewed as a fraudulent transfer. (*Id.* ¶ 8.)

Despite the written warning, less than a week later, on January 26, 2015, nComputing made an assignment for the benefit of creditors. (Dkt. No. 1 ¶ 8; *see also* Dkt. No. 17-1 at 26.) At some point thereafter, the assignee transferred virtually all assets of nComputing to ZeroDesktop. (Dkt. No. 1 ¶¶ 5, 8.) Song and Maier, Kim's business associates who previously worked at nComputing, now work for ZeroDesktop. (*Id.*)

In the meantime, on January 23, 2015, Plaintiffs registered in Delaware the Judgment against Kim. (*Id.* ¶ 4, 8; Dkt. No. 18-8 at 14 ¶ 1.) One week later, Plaintiffs issued a citation to nComputing to attach Kim's shares in the company to satisfy the judgment. (Dkt. No. 1 ¶ 8; Dkt. No. 18-8 at 14.) After nComputing failed to respond to the citation, on March 20, 2015 judgment ("the Delaware Judgment") was entered against nComputing in favor of Plaintiffs in the amount of $10,000,000.00. (Dkt. No. 1 ¶ 8.) On February 26, 2015, Plaintiffs filed an action against Kim (and the two other defendants in the initial Oregon case) in San Mateo County Superior Court to collect on the Judgment. (Dkt. No. 18-1 at 38.) In that case, Plaintiffs sought an order charging Kim's interest in ZeroDesktop, but the motion was denied on procedural grounds. (Dkt. Nos. 18-3—18-7, 18-8 at 2.)

1    On May 15, 2015, Plaintiffs filed the instant complaint alleging that all defendants are
2 liable for fraudulent transfers and conspiracy to defraud in connection with nComputing's transfer
3 of assets to ZeroDesktop. Plaintiffs seek a declaration that the transfers were fraudulent and
4 voidable and that the property transferred be awarded to Plaintiffs, as well as at least
5 $10,000,000.00 in compensatory damages and $5,000,00.00 in punitive damages. (Dkt. No. 1 at
6 4.) Defendants Kim, Song, ZeroDesktop, and DTC appeared and consented to magistrate judge
7 jurisdiction. (Dkt. Nos. 9, 16, 28.) Defendants Klaus Maier and nComputing, Inc., failed to
8 appear, and the Clerk of Court entered their default. (Dkt. No. 13, 34.) Song and ZeroDesktop
9 filed the instant motion to dismiss, contending that the complaint must be dismissed for failure to
10 state a claim for fraudulent transfer and conspiracy and also failure to comply with the heightened
11 pleading standard for fraud claims. (Dkt. No. 17.) By stipulation of the parties, the Court now
12 severs Plaintiffs' claims against the defaulting defendants and will proceed to decision on the
13 motion to dismiss. (Dkt. No. 35, 36.)

**LEGAL STANDARD**

15 A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege
16 "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*
17 *Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability
18 requirement" but mandates "more than a sheer possibility that a defendant has acted
19 unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations
20 omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual
21 allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the
22 non-moving party." *Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.
23 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of
24 sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare*
25 *Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see*
26 *also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a
27 claim on the basis of a dispositive issue of law").
28    Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under

1 which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).

**DISCUSSION**

Defendants argue that the complaint must be dismissed because it does not adequately plead fraudulent transfer or conspiracy.[1] The parties dispute whether the Court can consider the additional materials that Defendants submitted in connection with their motion to dismiss. They also dispute whether Rule 9(b)'s heightened pleading requirement applies to Plaintiffs' claims. The Court will address these questions before turning to the substance of each cause of action alleged.

---

[1] In the caption of their motion, Defendants also move for dismissal for lack of ripeness under Federal Rule of Civil Procedure 12(b)(1). But they mention ripeness in the substance of the motion only in passing, even then framing the lack of ripeness as inadequately pleaded damages. Their motion includes the legal standard only for a 12(b)(6) motion and almost entirely focuses on the insufficiency of the allegations in that context. The Court therefore concludes that Defendants are moving solely under Rule 12(b)(6).

4

### I. Extra-Pleading Materials

When adjudicating a motion to dismiss brought pursuant to Rule 12(b)(6), the Court's consideration of extra-pleading materials is limited. Normally, the Court cannot consider matters outside of the pleading without converting the motion into one for summary judgment. *See* Fed. R. Civ. P. 12(b)(6); *see also Ramirez v. United Airlines, Inc.*, 416 F. Supp. 2d 792, 795 (N.D. Cal. 2005) ("[M]aterials outside the pleadings ordinarily are not considered on a motion to dismiss[.]"). However, courts may consider documents alleged in a complaint and essential to a plaintiff's claims. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998). A court may also "take judicial notice of documents on which allegations in the complaint *necessarily* rely, even if not expressly referenced in the complaint, provided that the authenticity of those documents is not in dispute[,]" *Tercica, Inc. v. Insmed Inc.*, No. C 05-5027 SBA, 2006 WL 1626930, at *8 (N.D. Cal. June 9, 2006) (emphasis in original) (citing *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 837-38 (N.D. Cal. 2000)), and may take judicial notice of matters of public record, *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010), including court filings, *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

Here, Defendants request that the Court take judicial notice of 11 documents in connection with the motion to dismiss. (Dkt. No. 18.) Exhibits A through K to Defendants' Request for Judicial Notice are all documents filed on the public docket in Washington County Circuit Court in Oregon, San Mateo County Superior Court in California, and New Castle County Superior Court in Delaware pertaining to Plaintiffs' various collection actions against Kim. (Dkt. Nos. 18-1—18-8.) Plaintiffs object to the Court's consideration of these documents on the grounds that the documents are not certified copies. (Dkt. No. 23-1.) The relevant Ninth Circuit case law does not require that court filings to be certified copies in order to take judicial notice, *see Reyn's Pasta Bella*, 442 F.3d at 746 n.6, and Plaintiffs have not cited any case law that requires as much. Thus, the Court takes judicial notice of these documents over Defendants' objection. However, the documents are for the most part irrelevant to the Court's decision on the motion to dismiss as whether Plaintiffs have previously sought to enforce the judgment via other means has no bearing

1    on whether the complaint states a claim.

2        Defendants also submitted two documents attached to the declaration of Defendant Young
3    Song in support of the motion to dismiss. (Dkt. Nos. 17-1.) Exhibit A is a letter from Plaintiffs'
4    counsel to Song referenced in the complaint at paragraph 8, in which Plaintiffs allege that "[o]n or
5    about January 20, 2015, Oregon counsel for Creditors advised nComputing in writing of the
6    [Judgment] and further advised nComputing that any asset transfer by nComputing would be
7    viewed as a fraudulent transfer." (Dkt. No. 1 ¶ 8.) Exhibit B is a Notice of Assignment for the
8    Benefit of Creditors, referenced in the same paragraph. (*Id.* ("Less than a week after receiving
9    such notice, nComputing made an assignment for the benefit or creditors, and that assignee
10   immediately transferred virtually all assets of nComputing to ZeroDesktop."). Plaintiffs object to
11   the Court's consideration of these documents at this stage of the litigation, urging that a 12(b)(6)
12   motion is limited to the four corners of the complaint, but do not contest the documents'
13   authenticity. (Dkt. No. 23-1.) The documents are referenced in the complaint and central to the
14   claims: the letter highlights that nComputing had notice of Plaintiffs' claims as creditors, while the
15   Assignment for the Benefit of Creditors is one of the fraudulent transfers alleged. The Court
16   therefore considers Exhibits A and B to the Song Declaration as they were referenced in the
17   complaint, essential to the claims, and their authenticity has not been challenged.

18       The Court will judicially notice or consider the documents solely for the purpose of noting
19   that the documents were filed, not for the truth of the matters asserted therein. *See, e.g.*,
20   *McMunigal v. Bloch*, No. C 1002765 SI, 2010 WL 5399219, at *2 (N.D. Cal. Dec. 23, 2010)
21   (judicially noticing records of other proceeding "only for the purposes of noticing the existence of
22   the [prior] lawsuit, and the fact that various documents were filed therein") (citation omitted).

23   **II.**     **Sufficiency of the Complaint**

24       A.     *The Heightened Pleading Standard of Rule 9(b) Applies*

25       The main claim underlying both causes of action in the complaint is fraudulent transfer;
26   the second cause of action for conspiracy to defraud is based on a conspiracy to effect the
27   fraudulent transfers alleged in the first cause of action. The gravamen of the claims is that Kim, as
28   debtor, arranged with the help of all Defendants for nComputing to transfer its assets to

6

ZeroDesktop to prevent Plaintiffs from satisfying their debt against Kim through his shares of nComputing. The parties dispute whether the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to these claims.

In cases where fraud is not a necessary element of a claim, but a plaintiff nonetheless frames the claims as a course of fraudulent conduct, "the claim is said to be 'grounded in fraud' or to 'sound in fraud' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (citation omitted). So it is here. The complaint urges that Defendants engaged in the fraudulent transfers "with intent to hinder, delay, or defraud creditors" such as Plaintiffs and "conspired to effectuate the Transfers to ZeroDesktop as part and parcel of a conspiracy to defraud" Plaintiffs. (Dkt. No. 1 ¶¶ 11, 17.) These allegations leave no doubt that the claims "sound in fraud" such that the heightened pleading standard applies. Indeed, courts in this District regularly hold that Rule 9(b) applies to a fraudulent conveyance claim alleging intent to hinder, delay, or defraud.[2] *See, e.g.*, *Opperman v. Path, Inc.*, --- F. Supp. 3d ----, No. 13-cv-00453--JST, 2014 WL 1973378, at *31 (N.D. Cal. May 14, 2014); *Kelleher v. Kelleher*, No. 13-cv-05450-MEJ, 2014 WL 94197, at *5 (N.D. Cal. Jan. 9, 2014) ("Because a claim for actual fraudulent transfer involves an allegation of fraud or mistake, it is subject to [Rule] 9(b), which requires a party to 'state with particularity the circumstances constituting fraud or mistake' and is applied by a federal court to both federal law and state law claims.") (citation omitted); *Hyosung (Am.), Inc. v. Hantle USA, Inc.*, No. C 10-02160 SBA, 2011 WL 835781, at *4 (N.D. Cal. Mar. 4, 2011) (Rule 9(b) applies to fraudulent transfers alleged to have occurred with "actual intent to hinder, delay, or defraud" a creditor) (citation omitted); *Kennedy Funding, Inc. v. Chapman*, No. C 09-01957 RS,

---

[2] In contrast, a cause of action for *constructive* fraudulent conveyance under California Civil Code § 3439.05 "focuses entirely on the transaction at issue and does not include elements of knowledge, intent, or purpose" and thus does not sound in fraud and may not be subject to Rule 9(b)'s heightened pleading requirements. *See Sunnyside Dev. Co. LLC v. Cambridge Display Tech. Ltd.*, No. C 08-01780 MHP, 2008 WL 4450328, at *9 (N.D. Cal. Sept. 29, 2008). Although the complaint does not list a particular statutory section, it alleges that the transfer occurred with intent to hinder, delay, or defraud, which is actual—not constructive—conveyance. *See Wolkowitz v. Beverly (In re Beverly)*, 374 B.R. 221, 235 (9th Cir. BAP 2007) ("A transfer is said to be 'actually fraudulent' as to a creditor if the debtor made the transfer 'with actual intent to hinder, delay, or defraud any creditor of the debtor.'") (quoting Cal. Civ. Code § 3439.04(a)(1)).

2010 WL 2528729, at *9 (N.D. Cal. June 18, 2010) (same).  Likewise, courts have held that the heightened pleading standard also applies to claims of conspiracy to defraud.  *See, e.g.*, *Ajetunmobi v. Clarion Mortg. Capital, Inc.*, No. SACV 12-0568 DOC (JPRx), 2012 WL 2945051, at *7 (C.D. Cal. July 17, 2012) (claims for conspiracy to defraud are subject to Rule 9(b)'s heightened pleading standard) (citation omitted); *Solano v. Am.'s Servicing Co.*, No. 2:10-cv-02426-GEB-GGH, 2011 WL 1669735, at *10 (E.D. Cal. May 3, 2011) (same) (citations omitted).  Plaintiffs' argument that Rule 9(b) does not apply because their claims "have nothing to do with common law fraud" is therefore unavailing, since the rule applies broadly to any claim that sounds in fraud.  As currently alleged, Plaintiffs' claims do so here.

Thus, Plaintiffs' complaint must plead with particularity the circumstances surrounding the fraudulent transfer and conspiracy to defraud.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  To satisfy the heightened standard, allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  This includes "the who, what, when, where, and how of the misconduct charged."  *Vess*, 317 F.3d at 1106.  Conclusory allegations that a defendant's conduct was fraudulent are insufficient.  *Facebook, Inc. v. MaxBounty, Inc.*, 274 F.R.D. 279, 285 (N.D. Cal. 2011).  While, "[w]hen alleging fraud, a party must plead with particularity the circumstances constituting fraud, [ ] conditions of the mind, such as knowledge and intent, may be alleged generally." *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 935 (N.D. Cal. 2013) (internal quotation marks and citation omitted) (emphasis omitted).

B. *The Complaint Fails to Allege Fraudulent Transfer*

The first cause of action is for fraudulent transfer, also known as fraudulent conveyance.  A fraudulent conveyance is "a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim." *Yaesu Elecs. Corp. v. Tamura*, 28 Cal. App. 4th 8, 13 (1994).  To protect creditors from unseemly debtors, California's Uniform Fraudulent Transfer Act ("UFTA") provides that a transfer may be deemed invalid if a debtor transfers property with the "actual intent to hinder, delay, or defraud any

creditor of the debtor." Cal. Civ. Code § 3439.04(a)(1).  To state a claim for fraudulent transfer, "there must be a *transfer* of an *asset* as defined in the UFTA." *Fid. Nat'l Title Ins. Co. v. Schroeder*, 179 Cal. App. 4th 834, 840-41 (2009) (citation omitted) (emphasis in original).  Under the Act, "transfer" is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance."  Cal. Civ. Code § 3439.01(i).  An "asset," in turn, is defined by the term "property," which includes "anything that may be the subject of ownership."  Cal. Civ. Cod § 3439.01(a), (h).  A creditor cannot premise a UFTA claim on a transfer unless it "puts beyond [the creditor's] reach property [the creditor] otherwise would be able to subject to the payment of [ ] debt."  *Mehrtash v. Mehrtash*, 93 Cal. App. 4th 75, 80 (2001) (internal quotation marks and citation omitted); *see also id.* at 81.  Plaintiffs must also plead facts sufficient to plausibly establish that the transfer was made with "actual intent to hinder, delay, or defraud any creditor of the debtor."  Cal. Civ. Code § 3439.04(a)(1).  A transfer may be fraudulent in violation of the UFTA "whether the creditor's claim arose before or after the transfer" so long as that intent is alleged and the debtor "either (a) was engaged in or about to engage in a business or transaction for which the debtor's assets were unreasonably small, or (b) intended to, or reasonably believed, or reasonably should have believed, that he or she would incur debts beyond his or her ability to pay as they became due." *Cortez v. Vogt*, 52 Cal. App. 4th 917, 928 (1997) (citations omitted); *see also* Cal. Civ. Code § 3439.04; *Kelleher*, 2014 WL 94197, at *5.

      Plaintiffs' claim of fraudulent transfer is not plausibly alleged nor pleaded with the requisite particularity.  First, the complaint does not identify the particular defendants against whom the fraudulent transfer claim is brought.  (*See* Dkt. No. 1 ¶¶ 10-15.)  The body of the claim references only nComputing and ZeroDesktop, not the other defendants, but does not clarify that the other defendants are not sued under that claim.

      Turning to the substance of the claim itself, Plaintiffs allege that the assignment for the benefit of creditors and subsequent transfer to ZeroDesktop is the relevant transfer of assets by a debtor.  An assignment for the benefit of creditors "is an alternative to a Chapter 7 liquidation,

9

whereby the debtor assigns substantially all of its assets to the assignee (instead of a bankruptcy trustee) for the benefit of the debtor's creditors." *Tatung Co. v. Shu Tze Hsu*, 43 F. Supp. 3d 1036, 1066 (C.D. Cal. Sept. 2, 2014). The role of the assignee "is akin to that of a trustee or administrator of an estate who owes fiduciary duties to the estate's beneficiaries." *Berg & Berg Enters., LLC v. Sherwood Partners, Inc.*, 131 Cal. App. 4th 802, 825 (2005). While Defendants insist that an assignment for the benefit of creditors cannot serve as the "transfer of assets" for the purposes of a fraudulent transfer claim, they do not cite any authority in support of that proposition. At least one district court has found that a plaintiff can state a claim for fraudulent transfer premised on an assignment for the benefit of creditors, having found "no other authority or basis in the statutory text to hold that the Uniform Fraudulent Transfer Act is inapplicable to assignments for the benefit of creditors." *Tatung Co.*, 43 F. Supp. 3d at 1069. Nor has this Court. Thus, Plaintiffs have alleged the "what" and "when" of the fraudulent transfer—*i.e.*, a transfer based on the assignment of "virtually all assets" of nComputing valued at "millions of dollars" to an assignee within a week of January 20, 2015, followed by the assignee's transfer to ZeroDesktop. (Dk.t No. 1 ¶¶ 8, 11; *see also* Dkt. No. 17-1 at 26.)

Plaintiffs must also allege that a *debtor* completed the asset transfer. According to the complaint, *Kim* is the debtor of the $10,000,000.00 judgment. (Dkt. No. 1 ¶ 7.) While nComputing—not Kim—is alleged to have made the transfers at issue, the complaint also alleges that Kim controlled nComputing through his company DTC. (*Id.* ¶¶ 6, 8.) Thus, Plaintiffs have connected Kim and nComputing as the debtor conducting the transfer; they have not, however, so connected ZeroDesktop. While "the fraudulent conveyance statute provides for liability if the transferee colluded with the debtor or otherwise actively participate[d] in the fraudulent scheme of the debtor[,]" *Kelleher*, 2014 WL 94197 (citing *Lewis v. Super. Ct.*, 30 Cal. App. 4th 1850, 1858 (1994)), the complaint does not allege any facts from which the Court can reasonably infer that ZeroDesktop colluded with nComputing, Kim, or otherwise knew about and actively participated in an attempt to defraud Plaintiffs. Similarly, aside from the allegation that Song used to work for nComputing and now works for ZeroDesktop, the complaint fails to allege any facts whatsoever pertaining to his role from which the Court can reasonably infer his participation. Thus, Plaintiffs

10

have identified an asset transfer by nComputing and Kim, but no other defendant, that could conceivably give rise to liability under the UFTA.

But even so, Plaintiffs' allegations do not establish that the assignment and transfer put beyond Plaintiffs' reach the property they would otherwise be able to subject to the payment of debt, as required to show that a plaintiff has been damaged by the fraudulent transfer. *See Mehrtash v. Mehrtash*, 93 Cal. App. 4th 75, 81 (2001); *Opperman*, 2014 WL 1973378, at *31. Put another way, the complaint does not explain how nComputing's assignment for the benefit of creditors, and that assignee's transfer of assets to ZeroDesktop, will affect Kim's shares in the company and thus Plaintiffs' ability to collect their judgment against him. Absent such allegations, Plaintiffs cannot state a claim for fraudulent transfer. For this reason, too, the fraudulent conveyance claim must be dismissed.

Defendants' insistence that Plaintiffs will never be able to show that absent the transfer they could have satisfied Kim's debt through nComputing because the assignee—not nComputing—would retain the funds transferred to ZeroDesktop, ignores what Plaintiffs have actually pleaded: that the assignment for the benefit of creditors *and* the subsequent transfer to ZeroDesktop were part of the fraudulent transfer scheme; had neither occurred, nComputing would still have the assets. Thus, Defendants' argument that fraudulent transfer damages are unavailable as a matter of law is unpersuasive.

Lastly, while intent can be pleaded generally, here Plaintiffs allege only that nComputing had the intent to hinder, delay, or defraud Plaintiffs. (Dkt. No. 1 ¶ 11.) There are not even general allegations that the other defendants shared in this intent. Of course, other factual allegations besides alleging intent itself might be relevant. For example, in determining whether a debtor transferred assets with fraudulent intent, a court considers, among other factors, whether the debtor retained possession or control of the property after the transfer, whether the debtor was threatened with suit before the transfer, whether the transfer rendered the debtor insolvent or was of substantially all of the debtor's assets. *See* Cal. Civ. Code § 3439.04(b); *see also Filip v. Bucurenciu*, 129 Cal. App. 4th 825, 834 (2005) (citation omitted). But besides the conclusory allegation that "[t]he transfers were made for less than reasonably equivalent value at a time when

11

nComputing knew or should have known that it had unreasonably small capital remaining to pay its debts as they became due[,]" (Dkt. No. 1 ¶ 13), the complaint offers no facts to support this conclusory allegation or any of the other hallmarks of fraudulent intent listed in the statute. Thus, intent is not adequately pleaded.

In short, Plaintiffs have identified a transfer of assets—nComputing-to-assignee-to-ZeroDesktop—but have not adequately alleged why that transfer constitutes a fraudulent conveyance or how each of the defendants was involved in the purported scheme. The complaint therefore fails to state a claim for fraudulent conveyance. The Court will grant Plaintiffs leave to amend to cure the defects identified above.

        C.     *The Complaint Fails to Allege Conspiracy to Defraud*

To state a cause of action for civil conspiracy, the complaint must allege (1) the formation and operation of a conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting from such act or acts. *Younan v. Equifax, Inc.*, 111 Cal. App. 3d 498, 511 n.9 (1980). Thus, a civil conspiracy "must be activated by the commission of an actual tort[,]" *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994), or other wrong, *Younan*, 111 Cal. App. 3d at 511 n.9. For each element of conspiracy, "[b]are allegations and rank conjecture do not suffice[.]" *Choate v. Cnty. of Orange*, 86 Cal. App. 4th 312, 333 (2000) (internal quotation marks omitted).

The instant complaint fails to allege facts to plausibly establish any of the elements. First, with respect to the formation and operation of a conspiracy, a plaintiff must allege knowledge of the wrongful activity, agreement to join in the wrongful activity, and intent to aid in the wrongful activity. *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1583 (1995); *see also Wasco Prods., Inc. v. Southwall Tech., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006). The plaintiff must show that each member of the conspiracy came to the agreement. *See Arei II Cases*, 216 Cal. App. 4th 1004, 1022 (2013) (citation omitted). The conspiracy "may be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances." *117 Sales Corp. v. Olsen*, 80 Cal. App. 3df 645, 649 (1978). But when a plaintiff alleges that a defendant is liable for a fraud-based claim under a conspiracy theory, Rule 9(b)

requires the plaintiff to allege with particularity facts that support the existence of the conspiracy. *See, e.g.*, *Cisco Sys., Inc. v. STMicroelecs., Inc.*, 77 F. Supp. 3d 887, 894 (N.D. Cal. 2014) (citation omitted).

There are no facts in the complaint from which the Court can draw a reasonable inference that all defendants had knowledge of and agreed to the alleged fraud. First, the claim refers only generally to "defendants" without attributing particular conduct to any single defendant, which is insufficient to plead a conspiracy with a fraudulent end. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (noting that allegations that "merely lump multiple defendants together" are not enough to state a claim for conspiracy). The complaint does not provide a time-frame for when defendants entered the agreement, describe how defendants came to reach such agreement, or indicate that each defendant had knowledge of the wrongful act and intent to aid in it, so the elements of the formation and operation of a conspiracy are lacking. *See Kidron*, 40 Cal. App. 4th at 1583. The allegation that "[a]t or prior to the time of the Transfers, defendants, and each of them, entered into a conspiracy to defraud creditors" by "effectuat[ing] the Transfers to ZeroDesktop[,]" (Dkt. No. 1 ¶ 17), is conclusory and therefore insufficient to support a pleading of conspiracy under *Iqbal* and *Twombly*. *See Cisco Sys., Inc.*, 77 F. Supp. 3d at 894.

Nor have Plaintiffs adequately alleged the second element: an underlying "wrongful act," which requires a plaintiff to adequately plead a cause of action for a separate tort or other wrong. *See Applied Equip. Corp.*, 7 Cal. 4th at 511. In this case, the underlying wrongful conduct alleged is the fraudulent transfer. While a fraudulent transfer can serve as the underlying wrongful conduct giving rise to conspiracy liability, *see Filip*, 129 Cal. App. 4th at 837, for the reasons described above, the complaint does not adequately allege fraudulent transfer. Thus, the predicate "wrong" for a conspiracy claim is absent, and the claim fails. *See Applied Equip. Corp.*, 7 Cal. 4th at 511.

Finally, "[d]amages are an essential element of a cause of action for conspiracy." *Filip*, 129 Cal. App. 4th at 837 (citation omitted). Plaintiffs allege that, as a result of the conspiracy, they have been damaged in an amount "not less than $10,000,000.00 plus interest thereon[.]" (Dkt. No. 1 ¶ 18.) But Plaintiffs have not alleged that nComputing fraudulently transferred 10

13

million dollars.  Nor have they explained why they would be entitled to collect that amount from Kim when $300,000.00 of the 10 million dollar judgment has already been paid.  Ultimately, Plaintiffs have not connected the damages sought to any alleged conspiracy.  Normally, the measure of compensatory damages for a conspiracy are the same as those for the underlying tort, only the conspiracy claim allows liability to reach co-conspirators.  *See Applied Equip. Corp.*, 7 Cal. 4th at 511; *see Riley v. Modesto Irrigation Dist.*, No. CV F 10-2281 AWI GSA, 2011 WL 31001796, at *7 (E.D. Cal. July 25, 2011) ("The damages result from the tort underlying the conspiracy.") (citation omitted).  As explained above, Plaintiffs' fraudulent transfer claim fails to plead cognizable damages, *see Mehrtash*, 93 Cal. App. 4th at 81; *Opperman*, 2014 WL 1973378, at *31, Plaintiffs likewise fail to plead damages for the purposes of their conspiracy claim.

## CONCLUSION

The complaint fails to adequately allege fraudulent transfer and conspiracy to defraud.  The Court therefore GRANTS motion to dismiss filed by Defendants Song and ZeroDesktop.  Plaintiffs are given leave to amend by October 1, 2015.  As the discussion above indicates, Plaintiffs' claims in the amended complaint must be pleaded with particularity consistent with Rule 9(b).

The case management conference currently scheduled for September 17, 2015, is continued to November 19, 2015 at 1:30 p.m., and a joint case management statement shall be filed seven days prior to the conference.

Pursuant to the parties' consent to severance (Dkt. No. 35), the Court has severed the claims against defaulting defendants nComputing and Maier.  The Court directs the Clerk of Court to terminate nComputing and Maier as defendants from this action and to assign a new case number to the complaint against them and assign the new action to the undersigned magistrate judge.

This Order disposes of Docket No. 17.

**IT IS SO ORDERED.**

Dated:  September 16, 2015

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

15